```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
In re:
                                                                Chapter 7
                                                                No. 15-12746 (CGM)
MICHAEL N. SCHWARTZ,


                                    Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA,                                       Adversary Proceeding No.

                                    Plaintiff,

        - against -

MICHAEL N. SCHWARTZ,

                                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
```

### COMPLAINT OF THE UNITED STATES OF AMERICA TO OBJECT TO DISCHARGE

Plaintiff, the United States of America, on behalf of the Internal Revenue Service (the "IRS" or "Government"), by and through its attorney, Preet Bharara, United States Attorney for the Southern District of New York, hereby alleges on information and belief as follows:

### INTRODUCTION

1.      On October 8, 2015, Michael N. Schwartz (the "Debtor") filed for bankruptcy under Chapter 7 of the Bankruptcy Code seeking discharge of one debt to one creditor: more than $35 million owed to the IRS.  The Debtor incurred this debt in connection with his role in organizing, promoting, and selling tax shelters.

15-12746-mkv    Doc 33    Filed 03/22/16    Entered 03/22/16 20:30:03    Main Document
Pg 2 of 15

2. The Debtor is a sophisticated professional. He was a certified public accountant at KPMG and PricewaterhouseCoopers before he left to devote himself to organizing, promoting, and selling his own tax shelter products.

3. The debt at issue came about after the IRS commenced an examination to determine whether the Debtor failed to register tax shelters he organized, promoted, and sold. In July and August 2015, the IRS assessed a promoter penalty of $35.4 million pursuant to section 6707 of the Internal Revenue Code for the Debtor's failure to register the tax shelters as required under the Internal Revenue Code.

4. The Debtor filed for bankruptcy two months later. In his bankruptcy filing, the Debtor claims a monthly income of $0, and a household income of only $450 in interest and dividend income from his wife's investments. He claims monthly expenses of $6,530. Until very recently, however, the Debtor's income was significantly more substantial. He reported wages of more than $300,000 in 2013 and 2014, and $233,333 as of the time of filing for 2015.

5. Starting in 2004, when the Debtor first learned that the IRS was investigating his tax shelters, the Debtor transferred substantial property and funds to his wife, including his interest in three properties and more than $300,000.

6. The IRS objects to discharge under 11 U.S.C. § 727.

7. This action has been authorized and requested by a delegate of the Secretary of the Treasury, and is brought at the direction of the Attorney General of the United States pursuant to the provisions of 26 U.S.C. § 7401, as amended.

15-12746-mkv    Doc 33    Filed 03/22/16    Entered 03/22/16 20:30:03    Main Document
Pg 3 of 15

## PARTIES

8. The Plaintiff is the United States of America, on behalf of the Internal Revenue Service (the "IRS").

9. The Defendant, Michael N. Schwartz, is the Debtor in the associated bankruptcy proceeding, No. 15-12746, under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). He resides at 425 East 78th Street, Apartment 6C, New York, New York 10075.

## JURISDICTION AND VENUE

10. This is a Complaint under Federal Rules of Bankruptcy Procedure 7001 and 11 U.S.C. § 727(a) to object to the discharge sought by the Debtor through this bankruptcy proceeding.

11. The district court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a), and this case is referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a) and the Southern District of New York's Amended Standing Order of Reference Re: Title 11, M10-468, 12 Misc. 00032, dated January 31, 2012 (Preska, C.J.) .

12. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), (J).

13. Venue in this district is proper pursuant to 28 U.S.C. § 1409.

## FACTUAL ALLEGATIONS

A.  <u>The Bankruptcy</u>

14. On October 8, 2015, the Debtor commenced this case by filing a voluntary petition (the "Petition"), his schedules of assets and liabilities (the "Schedules"), and his Statement of Financial Affairs.

15. On October 14, 2015, the Debtor filed an Amended Schedule A.

16. On November 4, 2015, the Debtor filed amendments to Schedule B and Schedule C.

17. On March 3, 2016, the Debtor filed an amended Statement of Financial Affairs.

18. The IRS is the sole creditor listed in the Petition, and its claim of $35,490,134 is the sole liability listed in the Petition.

19. The Debtor signed his name under penalty of perjury to the Petition, Schedules, the Statement of Financial Affairs, the amended Schedule A, the amended Schedule B, the amended Schedule C, and the amended Statement of Financial Affairs.

B.   The Debtor

20. The Debtor, Michael N. Schwartz, is a certified public accountant licensed by the State of Pennsylvania. He has a B.S. in Accounting from Pennsylvania State University and an M.S. in Taxation from Drexel University.

21. The Debtor is currently self-employed. Prior to filing for bankruptcy, the Debtor was a Senior Manager and Director at the accounting, tax, and financial advisory firm WeizerMazars LLP. Before that, he was a tax partner with the Finance and Treasury Group of PricewaterhouseCoopers. Previously, Schwartz worked at KPMG for more than 13 years; for nine of those years the Debtor was the partner in charge of the New York region international tax practice and chairman of the firm's transfer pricing task force.

22. The Debtor has written articles published in Tax Notes, Tax Notes International, the International Tax Review, the Transfer Pricing Tax Report and the CPA Journal. He has also spoken in a number of forums, including the World Trade Institute,

Global Education Services, FSC/Disc Tax Association, American Management Association, AICPA National Conference on Banks & Savings Institutions, and Tax Executive Institute. The Debtor was a co-chair for the NYU School of Continuing Education Introduction to International Tax Seminar.

C.      The Debtor's Tax Shelters

23.     From 2002 to 2004, the Debtor and two companies he owned, Multinational Strategies, LLC and Coastal Trading, LLC, organized, promoted, and sold unregistered tax shelters to investors. According to the Petition, the Debtor has an 84% interest in Multinational Strategies, LLC ("MNS"), and an 85% interest in Coastal Trading LLC ("Coastal").

24.     In early 2004, the IRS commenced an investigation into the Debtor's companies' transactions. On April 21, 2004, the IRS sent letters to MNS and Coastal requesting information about the transactions. Those letters noted that "any person who organizes a potentially abusive tax shelter or sells an interest in such a tax shelter (including any material advisor)" must maintain a list identifying each purchaser of an interest in the shelter, and made requests for such lists.

25.     Approximately two months after the IRS's letters were sent, the Debtor began transferring his ownership interests in three New Jersey properties to his wife for no consideration: On June 24, 2004, the Debtor purportedly transferred his interest in a single-family residential house on 21 Navajo Road in East Brunswick, New Jersey to his wife for no consideration; on July 8, 2004, the Debtor purportedly transferred his interest in a condominium on 344 Danbury Lane in East Brunswick to his wife for no consideration; and

on July 12, 2004, the Debtor purportedly transferred his interest in a beachfront house on 109 South Nashville Avenue in Ventnor, New Jersey to his wife for no consideration.

26. In connection with the IRS's examination of the Debtor, the IRS determined that transactions he organized, promoted, and sold constituted tax shelters required to be registered under Internal Revenue Code section 6111, and that the Debtor was a tax shelter organizer who was required to register the transactions pursuant to Internal Revenue Code section 6111 and associated regulations. The IRS further determined that the Debtor's failure to register the tax shelters resulted in penalties under Internal Revenue Code section 6707 in the amount of $35,490,134.

27. On July 16, 2014, the IRS sent the Debtor a letter notifying him of the penalties assessed against him in the amount of $35,490,134 "for [his] failure to register a tax shelter as required by IRC § 6111 and the associated regulation" (the "Promoter Penalty").

D. The Debtor's Incomplete Financial Information

28. On June 11, 2015, the Debtor appealed the Promoter Penalty by filing an administrative protest with the IRS. In September 2015, the IRS prepared a rebuttal to the Debtor's protest.

29. On September 17, 2015, the IRS issued notice and demand letters pursuant to Internal Revenue Code section 6303 notifying the Debtor that the IRS had charged him penalties for failing to register tax shelters in the total amount of $35,490,134.

E. The Debtor's Bankruptcy Petition

30. Three weeks later, on October 8, 2015, the Debtor filed for bankruptcy. He listed the $35,490,134 penalty as his only liability and the IRS as his only creditor.

31. In his Petition, the Debtor reported the following assets: (1) a 50% interest in a cooperative apartment at 425 East 78th Street, Apartment 6C in New York City, valued at $259,200; (2) a Charles Schwab 401(k) account valued at $243,551; (3) a TD Ameritrade Roth IRA account, valued at $125,236; (4) an IRA account valued at $2,000; (5) accounts receivable valued at $49,250; and (6) miscellaneous personal assets valued at $4,000.

32. Schedule I of the Petition shows that the Debtor has been employed as a certified public accountant in his own firm since September 2015. The Debtor states that his monthly income in that position is $0, but that he expects his income to increase within the year after the filing of the Petition.

33. The Debtor indicates that his household draws a monthly income of only $450 from interest and dividends from his wife's investments, while monthly expenses are $6,530.

34. On October 8, 2015, the Debtor filed a Statement of Financial Affairs showing that his income in 2013 and 2014 was $350,000, and that as of the date of the filing of the Petition, the Debtor earned $233,333 in income in 2015 from his previous employer, WeiserMazars LLP. In that Statement of Financial Affairs, the Debtor stated under penalty of perjury that he had made no transfers of property within the two years immediately preceding the bankruptcy (other than property transferred in the ordinary course of the business of the Debtor).

35. In February 2016, the Government requested that the Debtor provide additional financial information regarding his and his wife's assets. In response, the Debtor provided statements for the period from September 15, 2009 through September 30, 2015 for a shared Citibank joint checking account, as well as corresponding cancelled checks. The Debtor did not provide any financial information regarding his wife's assets.

36. The Citibank joint checking account bank statements that were provided were addressed to Michael N. Schwartz and Cheryl Schwartz at 109 South Nashville Avenue, Ventnor, New Jersey 08406 (the "Ventnor Property"). Although the Debtor purportedly transferred his interest in this property to his wife for no consideration in July 2004 (soon after learning that the IRS had commenced an investigation into his companies' transactions), he received his bank statements there in 2015.

37. The cancelled checks for the Citibank joint checking account provided bore the following payee information: Michael Schwartz, Cheryl Schwartz, 21 Navajo Road, East Brunswick, New Jersey 05516 (the "East Brunswick Property"). Although the Debtor purportedly transferred his interest in this property to his wife for no consideration in June 2004, he identified that property as his own on checks drawn from the Citibank joint checking account in 2015.

38. In addition, the Citibank joint checking account bank statements and cancelled checks showed that the Debtor made regular payments toward the use of the Ventnor Property and the East Brunswick Property. For example, the Debtor made property tax payments for both properties, he made regular payments to the Ventnor Water and Sewer Office, and he made regular payments to South Jersey Gas.

39. According to the bank statements and cancelled checks provided, the Debtor transferred more than $200,000 to his wife and at least $137,000 to MNS, the limited liability company in which the Debtor has an 84% ownership interest. The bank statements provided also show that the vast majority of deposits in the Citibank joint checking account came directly from the Debtor's former employer, WeizerMazars LLP, and that the Debtor (or his

8

wife) withdrew at least $354,322 in cash from the account. The Debtor did not provide any information regarding his wife's assets.

40. On March 3, 2016, the Debtor filed an amended Statement of Financial Affairs showing that the Debtor made a $301,000 transfer to his wife in the two years immediately preceding the bankruptcy.

## COUNT ONE

### Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(2)(A)

41. The allegations contained in paragraphs 1 through 40 are incorporated by reference as if fully set forth herein.

42. The Court may deny discharge if "the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A). Courts apply Section 727(a)(2)(A) to transfers effected outside the one-year period where the transfer is concealed during the one-year statutory period. *See, e.g.*, *In re Gollomp*, 198 B.R. 433, 440 (S.D.N.Y. 1996).

43. Here, the Debtor has been transferring his property to his wife and others in order to hinder the IRS's ability to collect from him since the time the Debtor first learned that the IRS was investigating his tax shelters.

44. In June and July 2004, just months after the IRS sent letters requesting information regarding the tax shelters at issue, the Debtor transferred his interest in three homes in New Jersey to his wife for zero consideration.

45. The Debtor has also transferred substantial funds to his wife. The Debtor, who earned more than $300,000 annually from at least 2009 through 2014, claims to have no

assets whatsoever outside of his residence, his retirement accounts, and a few miscellaneous items. But he now acknowledges in his amended Statement of Financial Affairs that in the two years preceding this bankruptcy, the Debtor transferred at least $301,000 to his wife.

46. In addition, in the six years preceding this bankruptcy, the Debtor transferred at least $137,000 to MNS, the limited liability company in which he has an 84% ownership interest, and the Debtor (or his wife) withdrew at least $354,000 in cash from the bank account primarily funded by the Debtor's employment income.

47. There is substantial evidence of the Debtor's intent to conceal property from the IRS: the Debtor's transfers of his interest in three properties—at least two of which he still uses—to his wife for no consideration merely months after learning of the IRS's investigation into the tax shelters at issue; his transfer of more than $300,000 to his wife just in the last two years; his withdrawal of more than $300,000 in cash in the last six years; and his transfer of more than $100,000 to his company in the last six years, all the while claiming in this bankruptcy that his assets are limited to his residence, retirement accounts, and certain miscellaneous items. This conduct demonstrates that the Debtor intends to hinder the IRS's efforts to collect the Promoter Penalty, and thus warrants denial of the Debtor's discharge pursuant to 11 U.S.C. §727(a)(2)(A).

## COUNT TWO

### Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(3)

48. The allegations contained in paragraphs 1 through 47 are incorporated by reference as if fully set forth herein.

49. The Court may deny a debtor a discharge when "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information from

10

which the debtor's financial condition or business transactions may be ascertained, unless such act or failure to act was justified under all the circumstances of the case." 11 U.S.C. § 727(a)(3).

50.     In February 2016, the Government requested financial information from the Debtor and his wife in order to ascertain the Debtor's true financial condition. In response, the Debtor provided only bank statements and cancelled checks for what the Debtor claims to be his sole bank account. The September 2009 through September 2015 statements show that the Debtor transferred hundreds of thousands of dollars to his wife and company, and withdrew hundreds of thousands of dollars in cash, from an account funded primarily by his employment income. The statements do not show why any of those transfers or withdrawals were made.

51.     The Debtor has thus failed to provide requested financial information for his wife's investment accounts and bank accounts. Such information would shed light on the disposition of hundreds of thousands of dollars—or more—stemming from the Debtor's assets.

52.     The Debtor's failure to produce requested information upon reasonable request by the Government, has prevented the Government from ascertaining the Debtor's true financial condition, and indicates that the Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information from which the Debtor's financial condition might be ascertained, and thus warrants denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(3). As a certified public accountant and sophisticated professional, the Debtor is well aware of the documents that the Government would need in

order to evaluate his financial condition and the disposition of his assets, yet he has failed to provide them.

## COUNT THREE

### Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4)

53. The allegations contained in paragraphs 1 through 52 are incorporated by reference as if fully set forth herein.

54. The Court may deny a debtor a discharge if "the debtor knowingly and fraudulently, or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4).

55. In this bankruptcy, the Debtor filed the Petition, its attendant schedules, and his Statement of Financial Affairs, certifying, under penalty of perjury, that each was true and correct to the best of his knowledge, information, and belief. The Debtor also filed amended schedules and an amended Statement of Financial Affairs, each of which was also signed under penalty of perjury.

56. In the Debtor's initial Statement of Financial Affairs, the Debtor stated, under penalty of perjury, that he made no transfers of property within two years of the bankruptcy, other than transfers made in the ordinary course of business. It was not until March 3, 2016—after the Debtor provided the bank statements and cancelled checks for his bank account in response to the Government's request—that the Debtor amended his Statement of Financial Affairs to include transfers to his wife of more than $300,000.

57. Moreover, the Debtor has knowingly and fraudulently made a false oath because his bankruptcy schedules, Statement of Financial Affairs, and subsequent amendments omitted any reference to two real property assets: the properties located at 109

South Nashville Avenue in Ventnor, New Jersey, and at 21 Navajo Road in East Brunswick, New Jersey.

58.     Shortly after learning that the IRS was investigating his tax shelters, the Debtor purportedly transferred his interest in the Ventnor Property and the East Brunswick Property to his wife. However, the transfers were for zero consideration. And the Debtor has retained actual beneficial ownership of both properties at all relevant times. In fact, the Debtor lists the East Brunswick Property as his address on checks drawn from the Citibank joint checking account, and the Debtor receives bank statements for the Citibank joint checking account at the Ventnor Property address. In addition, the Debtor has made regular property tax payments and utility payments for both properties.

59.     The Debtor made knowing and fraudulent false oaths by omitting at least the Ventnor Property and the East Brunswick Property as assets from the Petition Schedules (and amendments thereto). Therefore, denial of the debtor's discharge is warranted under 11 U.S.C. § 727(a)(4).

## COUNT IV

### Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(5)

60.     The allegations contained in paragraphs 1 through 59 are incorporated by reference as if fully set forth herein.

61.     A debtor's discharge may be denied if "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5).

62. Although the Debtor earned more than $300,000 annually from at least 2009 through 2014, he claims in the Petition to have no assets besides his residence, retirement accounts, and a few miscellaneous items.

63. However, the Debtor transferred his interest in three properties to his wife—for no consideration. And he transferred at least $301,000 to his wife, and at least $137,000 to one of his companies. Furthermore, the Debtor (or his wife) withdrew at least $354,000 in cash from the Citibank joint checking account—the only account the Debtor claims to own.

64. No explanation is given for the dissipation of these assets, and none is available from the documents the Debtor has thus far produced.

65. In fact, these transfers and withdrawals demonstrate that, rather than being an honest but unfortunate debtor, the Debtor has concealed assets from the IRS. The Debtor has failed to produce documentary evidence to contradict this conclusion (for example, the requested documentation regarding his wife's assets).

66. The Debtor has failed to account for the substantial loss of assets by producing documents to support the information contained in the Petition, the Schedules, and Statement of Financial Affairs.

67. The Debtor's failure to produce the requested documentary evidence regarding his wife's assets demonstrates that the Debtor has failed to explain satisfactorily the deficiency of assets to meet the Debtor's liability to the IRS, and thus warrants denial of the Debtor's discharge pursuant to 11 U.S.C. §727(a)(5).

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1.  Deny Defendant a discharge; and

2.  Award the United States its costs in bringing this action, and such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       March 22, 2016

                                                PREET BHARARA
                                                United States Attorney
                                                Southern District of New York
                                                Attorney for the United States

By:   */s/ Mónica P. Folch*
        Mónica P. Folch
        Assistant U.S. Attorney
        (212) 637-6559
        monica.folch@usdoj.gov